## Scott *versus* Watson *et al.*

A. agreed by parol to sell and convey to B. a lot of ground, for $75, the purchase-money to be paid in labour; on a settlement between the parties, A. owed B. for wages $58, which was to be credited on account of the purchase-money of the lot; A. subsequently repudiated the contract, and conveyed the lot to a third person, who obtained possession by ejectment: *Held,* that the amount owing by A. to B. was the wages of labour, and as such not liable to be attached.

ERROR to the Common Pleas of *Lancaster county*.

This was an attachment execution issued by a justice of the peace, on a judgment in favour of Watson & Brown against Evans Benn, and served on Alice Scott, as garnishee. The justice rendered judgment in favour of the attaching creditors, for $43.04, from which the garnishee appealed; and in the Common Pleas a case was stated for the opinion of the court, with leave to either party to sue out a writ of error, in which the following facts were set forth:—

In 1856, Alice Scott made a parol agreement to sell and convey to Evans Benn, a lot of ground containing three acres, for the price of $75; the purchase-money to be paid by labour to be done by Benn for Mrs. Scott. Benn went into possession under the agreement, and built a house upon it, and, in the mean time, worked for Mrs. Scott whenever required; so that at the last settlement between the parties, in 1858, there was due to Benn, for wages, $58, which was to be credited on account of the purchase-money of the lot.

After Benn had erected his house, Mrs. Scott conveyed the lot to Jacob Heidelbaugh, who brought ejectment against Benn, and dispossessed him. After the deed was made to Heidelbaugh, and before the ejectment was brought, Benn tendered to Mrs. Scott the balance of the purchase-money, and demanded a title, according to the contract. Mrs. Scott refused to take the money, or to make him a deed for the lot. The $58, which he had earned by his labour, had never been paid to him; and upon this fund the plaintiffs' attachment was laid.

The court below gave judgment for the plaintiffs on the case stated, and delivered the following opinion:—

"Whether the $58 in the hands of the defendant due to Evans Benn were subject to an execution attachment, or not, is the only question in this case. There was a parol contract between the defendant and him, for the purchase of a lot of three acres of land, which he was to pay for, in the whole $75, by his labour. He went into possession under this contract, and built a house on

[Scott v. Watson et al.]

the lot, and worked for Alice Scott, from time to time, whenever required. In the fall of 1858, they had their *last* settlement, and there was due to Benn, for the wages of labour, as it is stated, the sum of $58, *which was to be on account of the purchase-money of the land.*

"After Benn had finished the house on the lot, the same was conveyed by the holder of the legal title to Jacob Heidelbaugh, who brought ejectment against Benn and dispossessed him. In the mean time, after the deed made to Heidelbaugh, but before the ejectment, Benn tendered the balance of the said purchase-money to Mrs. Scott, and demanded a title to the lot, according to their contract. Alice Scott refused to take the money tendered, or to make a title to him, and she never paid him the $58 which he earned by his labour. The plaintiffs recovered a judgment against him for $43.04; issued an execution with an attachment, and attached the said $58 in the hands of Alice Scott as a debt due to Evans Benn.

"By the Act of the 15th April, 1845, § 5, *Pamph. L.* 460, it is provided, that the wages of any labourer shall not be liable to attachment in the hands of the employer. As these terms are extensive, the Supreme Court has found it necessary to define and limit them, in order to restrict their application according to the intention of the legislature. Where there was a contract by the master to hire two of his apprentices for wages, it was held, that the amount of such wages might be attached for the master's debt in the hands of the employer; so where a man contracted to repair the streets, and had horses, carts, and men employed to do the work at certain wages, it was held, that the sum due for their work to the contractor was liable to be attached for his debt in the hands of his employers, and that the true meaning of the wages of labour, is such wages as the labourer, by occupation, earns with his own hands, which the law intended to protect from attachment, as necessary for his immediate and daily support: Heebner v. Chave, 5 *Barr* 115. Two considerations enter into this definition: 1st, The description of the labourer who may claim the exemption; and 2d, The reason for granting it. As the law giving priority to servants' wages in the payments by executors and administrators, confines the description to menial servants, so this act, exempting the wages of labourers from attachment, is held to be confined to manual labourers, persons who are labourers by their calling, and earn their wages with their own hands. Evans Benn, we suppose, comes within this description, agreeably to the case stated. The reason for exempting the wages of such persons from attachment when the wages are still in the hands of their employer, is that they are deemed necessary for the subsistence of themselves and their families. But for this consideration there would be no more justice in exempting a sum of money

due the labourer for wages, than there would be in exempting a sum due him for any article of goods and chattels sold, or for money lent.

"The contract between Evans Benn and Alice Scott, did not, from the first, contemplate the payment of any money by the latter to him for the work which he was to do for her; but his work was to be performed, and the price or value of it was to be taken as so much purchase-money for the lot which she agreed to sell to him. They had settlements, it would seem, after this arrangement was agreed upon, and at their *last* settlement the wages of his labour were ascertained to amount to the sum of $58, which *was to be on account of the purchase-money of the lot.* He did not regard, at least before he was ousted, the sum he had earned by his labour in any other light than as so much purchase-money; he has never demanded it of her as wages for his subsistence, nor demanded that it should be paid to him, but even after she made the deed to Heidelbaugh, he went to her house, tendered the balance over and above the said $58, and demanded a title for the lot according to their contract. The lot has been recovered from him by ejectment. If he acquiesce in that verdict and judgment, he may claim damages for the violation of the contract of bargain and sale of the premises in an action against Alice Scott; and the payment of $58 in labour, on account of the purchase-money agreed on, will constitute a part of his claim. She owes him that amount, at least, on the case stated, being so much paid to her as part of the consideration of the lot which she agreed to sell to him, and afterwards sold and conveyed to another; but as this was never regarded by him as wages, so called, which he was earning for his subsistence, but as so much money paid to her, so must we consider it, and therefore it is to be treated just as so much money paid in coin on a contract that has failed, and which he is entitled on that account to recover back. We are of opinion, that the plaintiffs can recover under this attachment. Let judgment be entered for the plaintiffs for $43.04, with interest from November 20th 1858, and costs."

The garnishee thereupon sued out this writ, and here assigned such judgment for error.

*Eshleman*, for the plaintiff in error.—By the case stated it appears, that Evans Benn "*worked for Alice Scott* whenever required, so that at the last settlement between the parties, which was in the fall of 1858, *there was due to Benn, for the wages of labour*, the sum of $58."

Was this fund attachable? Benn was a labourer, and the $58 were wages in the hands of Alice Scott, the employer, and therefore could not be attached: The Pennsylvania Coal Company *v.* Costello, 9 *Casey* 244.

[Scott *v.* Watson *et al.*]

But the plaintiff below says the money could be attached because it was purchase-money of real estate, and not wages; and the court go one step further, and say that it cannot be considered as wages, because Benn did not demand it as wages for his subsistence, but demanded a title for the lot according to the contract.

When did the wages become purchase-money? The case says they were *wages* which were to be on account of the purchase-money of the lot. They never became purchase-money, because the lot never was conveyed according to contract. Benn did all in his power to fulfil the contract and turn the wages into purchase-money, but he was not permitted to do so. He never got the lot, and therefore never owed any purchase-money. Hence it was not called purchase-money in the case stated, but wages of labour. But even if it was purchase-money, it was still the *wages of labour*. The money was all earned by his own hands, and necessarily was wages until it was exchanged for real estate.

Does the fact that it was never demanded for subsistence, or that it was never demanded as wages at all, make it anything else than wages?

It is clear that no time is limited within which wages must be demanded, in order to make the act effective. The provision is that wages of labour *shall not be attached*—shall *never* be attached: Martin's Appeal, 9 *Casey* 395. The plaintiff in error is within the letter of the proviso. He is a labourer. The money attached was the wages of his labour. It was attached in the hands of his employer. It follows, therefore, under the Acts of Assembly, and under the decision of this court in The Pennsylvania Coal Company *v.* Costello, 9 *Casey* 241, that he is entitled to a reversal of the judgment of the court below.

*Amwake*, for the defendants in error.—We contend, that as soon as the settlement took place between the parties, and the $58, the amount of wages, were credited as so much paid on account of the purchase-money, it lost its character of wages, and Benn's interest in the equitable estate so acquired in the lot would have been bound by any lien acquired against him, and might have been sold in satisfaction of same; and the plea that the lot was paid for by his wages would have been unavailable.

Can Benn, after he acquiesced in the verdict and judgment in the ejectment against him, impress the $58 (so earned by his labour, and paid as purchase-money) with the character of wages again, so as to defeat this action? We contend, that when the $58 had once lost the character of wages, as it had the moment it was received as so much paid on the lot on account of the purchase-money, no act of either party, or the parties themselves, can subsequently again impress it with the character of wages.

[Scott *v.* Watson *et al.*]

PER CURIAM.—The debt attached is really due for the wages of a labourer. It was intended that it should be applied to the purchase of a lot of ground; but this intention failed, and it remained a debt for wages. It never was anything else, for it never was really applied, or, if it was, it was only contingently applied. The execution attachment did not change the nature of the thing attached: it remained a debt for wages still. If the purchase of the lot had been completed, the plaintiffs might have seized that, but it would have been subject to another exemption law. They have attached only the wages intended to be applied to that purchase, and they must take nothing by their writ.

Judgment reversed, and judgment for the defendant with costs, and record remitted.